**Application of FLORIDA EAST COAST RY., et al.**

Nos. 5561-RR and 5572-XP.

Railroad & Public Utilities Commission.

October 29, 1959.

Page Haddock, Jacksonville, for trustees of Florida East Coast Ry., applicants.

William J. Barrett, Jacksonville, for Railway Express Agency, Inc., applicant.

Fred M. Conway, Ormond Beach, for Ormond Beach Chamber of Commerce, protestant.

B. C. Forte, Melbourne, for Order of Railroad Telegraphers, protestant.

Chairman JERRY W. CARTER, Commissioners WILBUR C. KING and ALAN S. BOYD participated in the disposition of the applications.

BY THE COMMISSION.

Pursuant to statutory notice the commission by its duly designated examiner, Mark Hulsey, Jr., held public hearings on the applications on March 25 and April 7, 1959 in Ormond Beach.

The examiner's report and recommendation in the form of a proposed order was served upon the interested parties, including the protestants. Exceptions thereto were duly filed on behalf of the protestants and a reply to the exceptions was filed on behalf of the Florida East Coast Ry. The commission, having heard oral argument on the exceptions and the reply thereto in Tallahassee on September 23, 1959, now enters its order in the premises.

The Florida East Coast Ry. and Railway Express Agency, Inc., hereinafter called applicants, have filed separate applications for authority to discontinue their joint agency at Ormond Beach, Volusia County, Florida.

The passenger service at this station having been shown to be practically non-existent, primary attention must, therefore, be given to the effect of the proposed discontinuance of the Ormond Beach station upon freight and express service rendered to the public through such station. The proposals advanced by the applicants for the handling of freight and express upon the discontinuance of the station would require the agency functions to be taken over by the Daytona Beach agencies of the applicants, which agencies are located some 5.5 miles south of the Ormond Beach station.

The applicant, Florida East Coast Ry., proposes that carload shipments to and from Ormond Beach and its non-agency station at National Gardens would continue to be handled in much the same manner, but the paper work in this connection would of necessity be carried on at the Daytona Beach station. Less than carload shipments to and from Ormond Beach would continue to be handled through a pickup and delivery service between Day-

tona Beach and Ormond Beach which would be provided at no additional expense to the patrons.

The Railway Express Agency would also offer a pickup and delivery service out of Daytona Beach for its patrons in the Ormond Beach area, a service which is not now afforded there, and contend that they can do a better job for the Ormond Beach area in this manner.

In summary, the railway company contends that it will continue to serve its Ormond Beach patrons adequately with regard to carload shipments to or from such point and that it will give better service to those in that area who are concerned with less than carload shipments. At the same time, it contends that it will be able to enjoy a substantial annual savings by virtue of the closing of the Ormond Beach station. The Express Agency contention is that it will give a pickup and delivery service out of Daytona Beach which is not now furnished in the Ormond Beach area and that its patrons will be better served thereby.

It is evident that there is here involved a situation in which the applicants have attempted to show that they can effect a savings or avoid an economic waste by closing this station and absorbing its functions in their agencies at Daytona Beach. The extent of such savings was not proved conclusively, but there is no dispute about the fact that the Ormond Beach agency operation is a profitable one. The applicants are not requesting the closing of an agency operated at a loss, but are trying to accomplish a savings by centralizing their operations. The only direct savings accruing to the Florida East Coast Ry. was claimed to be at least $7,500 annually which is a relatively insignificant amount when it is considered that the potential gross revenue of the agency is in excess of one quarter of a million dollars annually. The issue of whether the applicants should be authorized to discontinue this service will depend upon a determination of whether the savings which might accrue to the applicants is outweighed by the benefit and convenience, if any, that might be derived by the public from the continuance of the agency.

The City of Ormond Beach and the Ormond Beach Chamber of Commerce, as protestants, produced some 13 witnesses. Their testimony with respect to the past and future growth of Ormond Beach and its adjacent areas was undisputed and revealed clearly that the community is expanding rapidly and would suffer now and in the forseeable future from the discontinuance of this station and the inconvenience resulting therefrom. The service being performed there is not only of vital importance to those who use

it, but its continuance is also valuable to the entire population of the area served in that the availability of such service is conducive to the continuing growth and prosperity of the community as a whole.

The testimony adduced on behalf of the protestants tends to show that this area is not only interested in having the present service continued, but is hopeful that increased and expanded service may be offered. The gross revenue from this station, amounting to some $250,000 annually, is no indication that it is not needed. To the contrary, it is an indication that the station should not be closed merely to allow the applicants to enjoy a savings which in the case of the Florida East Coast Ry. would not exceed $7,500 per year.

Being fully advised in the premises, it is the finding of the commission that public convenience and necessity will be better served by the continuance of the applicants' agencies at Ormond Beach than by their discontinuance, even though some savings might thereby be realized by the applicants. (In this regard, see In the Matter of the New York Central Railroad Company, a well considered opinion of the Indiana Public Service Commission dated July 24, 1959 and reported in Section 18,421, Utilities Law Reporter, State Volume.)

It is therefore ordered that the applications of Florida East Coast Railway Company and Railway Express Agency, Inc. to discontinue their agencies at Ormond Beach, Florida, be and the same are hereby denied.

Commissioner ALAN S. BOYD dissents as follows —

A committee of the NARUC submitted a formula for recommended use in applications for the discontinuance of railroad station agencies. This formula was studied by the Florida Railroad & Public Utilities Commission and subsequently adopted for use in applications to be heard in Florida. This became a policy of the commission. It has been followed with rare exceptions.

In the instant application, the applicant railroad followed the formula in presenting its sworn cost figures. On the basis of the results, the application herein should be granted.